***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner with some modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer at all relevant times herein.
3. Travelers Insurance Company was the carrier on the risk at all relevant times.
4. Plaintiff's average weekly wage yields the maximum rate for 1999, $560.00, per Industrial Commission Form 22.
5. The parties stipulated to plaintiff's medical records from Triangle Arthritis Rheumatology Associates, and Raleigh Hand Center, P.A.
6. The issues presented are:
 a) Whether plaintiff is entitled to benefits pursuant to N.C. GEN. STAT. § 97-29, N.C. GEN. STAT. § 97-30, or N.C. GEN. STAT. § 97-31; and
 b) Whether plaintiff is entitled to a change in his treating physician.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 43 years old and had a two-year Associate's Degree from Pennsylvania State University in Telecommunications Technology.
2. In February 1983, plaintiff went to work with Bell Northern Research, now defendant-Nortel Networks. In this capacity, he worked on proprietary telephone switching equipment manufactured by defendant-employer. The majority of plaintiff's experience was with one particular phone system that only defendant-employer produces. All of his work involved extensive use of his hands, wrists and arms. Before 1996, plaintiff had no significant or pre-existing problems with his arms.
3. Beginning in 1996, plaintiff began to develop pain in his hands, wrists and arms. He was eventually diagnosed with bilateral carpal tunnel syndrome and bilateral cubital tunnel syndrome. These conditions were accepted as compensable by defendant-employer on an Industrial Commission Form 60 dated April 28, 1998.
4. Plaintiff treated with Dr. George S. Edwards, Jr., an orthopaedist. Dr. Edwards performed left carpal tunnel release surgery in April 1998. In June 1998, Dr. Edwards stated that plaintiff had reached maximum medical improvement of his left hand and assigned plaintiff a 4% permanent partial impairment rating to his left hand. Plaintiff continued to have problems related to his work. By January 1999, Dr. Edwards felt plaintiff had also reached maximum medical improvement of the right hand and assigned plaintiff a 2% permanent partial impairment rating to his right hand.
5. Plaintiff has not been paid permanent partial disability compensation for these ratings. Plaintiff's average weekly wage for 1998 as shown on the Form 60 yields the maximum compensation rate for that year of $532.00.
6. Plaintiff continued to attempt to work throughout 1999. In April 1999, defendant-employer transferred plaintiff to a different work group that required much more keyboarding. By the summer of 1999, plaintiff's symptoms increased significantly. He returned to Dr. Edwards for treatment in September 1999 and was removed from work for twelve weeks.
7. Dr. Edwards noted that plaintiff's job duties had significantly aggravated his symptoms in his hands and arms. Plaintiff also had developed new conditions of bilateral, lateral epicondylitis and medial epicondylitis. Dr. Edwards stated that the aggravations and new conditions were causally related to plaintiff's work performed during 1999. Dr. Edwards also stated that plaintiff's conditions from January 1999 through the time of his deposition were more likely than not due to causes and conditions characteristic of and peculiar to his employment, not ordinary diseases of life to which the general public is equally exposed. Dr. Edwards also testified that but for his job duties, plaintiff would not have developed these symptoms.
8. Plaintiff attempted to return to work for approximately three weeks in December 1999 and his conditions worsened significantly. Dr. Edwards permanently removed plaintiff from his job with defendant-employer. Plaintiff last worked on December 23, 1999. Plaintiff filed a new Form 18 with the Commission on April 18, 2000 for the new bilateral arm problems he experienced.
9. Dr. Edwards last saw plaintiff in March 2000 and rated plaintiff with a 9% permanent partial disability rating to each hand. Dr. Edwards stated at his deposition that plaintiff was permanently and totally disabled from his former employment with defendant-employer and that he is permanently restricted from work involving keyboarding.
10. In August 2000, plaintiff began treating with Dr. Silvia Ross, a rheumatologist, on referral from Dr. Edwards. After a substantial course of treatment by Dr. Ross that was successful in alleviating plaintiff's neck pain, plaintiff continued to suffer from a bilateral mechanical injury to his hands, wrists and arms. Dr. Ross stated in her deposition that plaintiff's job duties exposed him to a greater risk of developing these problems than members of the public generally and that his job duties were a significant contributing factor in the development of these conditions. Dr. Ross also testified that plaintiff had reached maximum medical improvement as of her deposition on March 8, 2001.
11. Dr. Ross further testified that plaintiff was permanently and totally disabled from all competitive employment. Dr. Edwards deferred to Dr. Ross' opinions from a rheumatological standpoint. Both Drs. Edwards and Ross stated that any further employment for plaintiff would have to be substantially modified.
12. Mr. Stephen D. Carpenter testified as an expert in Vocational Rehabilitation and Evaluation. After meeting with plaintiff on one occasion, Mr. Carpenter testified there were no jobs available in the competitive job market within plaintiff's limitations and that plaintiff is unable to earn competitive wages.
13. Defendant-employer presented the testimony of vocational expert Ms. Sylvia Henry. Ms. Henry stated her opinion that jobs for plaintiff could possibly be modified to allow plaintiff to work. However, defendants produced no evidence of any competitive jobs plaintiff can perform within his restrictions, including none with defendant-employer. As of the time of the hearing before the Deputy Commissioner, defendants had presented no rehabilitation plan and had initiated no job search for plaintiff.
14. The competent evidence in the record establishes that plaintiff's bilateral hand, wrist and arm conditions, including carpal tunnel syndrome, cubital tunnel syndrome, lateral epicondylitis and medial epicondylitis, are compensable occupational diseases. Plaintiff's job duties were a significant contributing factor in the development of these conditions. Plaintiff's job duties exposed him to a greater risk of developing these conditions than members of the public generally.
15. The competent evidence of record establishes that plaintiff was exposed to new and increased duties in his employment with defendant-employer during his attempt to return to work in 1999. These duties caused plaintiff's new conditions of bilateral, lateral epicondylitis and medial epicondylitis. These duties also substantially aggravated plaintiff's preexisting, compensable bilateral carpal tunnel syndrome and cubital tunnel syndrome.
16. The treatment by Drs. Edwards and Ross has been reasonable and necessary to effect a cure, give relief, or lessen plaintiff's period of disability. Moreover, both Dr. Ross, a rheumatologist, and Dr. Edwards, an orthopedic surgeon, should be authorized as plaintiff's treating physicians.
17. Due to his contraction of the new occupational diseases and significant aggravation of his preexisting work-related conditions occurring in 1999, plaintiff is entitled to an increase in his compensation rate reflecting the 1999 maximum compensation rate of $560.00 per week for the compensation period beginning December 23, 1999.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. As the result of plaintiff's job duties with defendant-employer in 1999, plaintiff contracted bilateral, lateral epicondylitis and medial epicondylitis, as well as a significant aggravation of his preexisting, admittedly compensable bilateral carpal tunnel syndrome and cubital tunnel syndrome. These conditions were due to causes and conditions characteristic of and peculiar to his employment with defendant-employer, are not ordinary diseases of life to which the general public not so employed is equally exposed, and are, therefore, occupational diseases within the meaning of the statute. N.C. GEN. STAT. § 97-53(13).
2. As a result of the contraction of these compensable occupational diseases, plaintiff is permanently and totally disabled and is entitled to compensation at a rate of $560.00 per week beginning December 23, 1999 and continuing for his lifetime. N.C. GEN. STAT. § 97-29.
3. As a result of the contraction of the compensable occupational diseases of bilateral carpal tunnel syndrome and cubital tunnel syndrome, plaintiff is entitled to permanent partial disability compensation benefits for 4 weeks at the 1998 maximum compensation rate of $532.00 per week for the 2% permanent partial disability rating to his right hand. N.C. GEN. STAT. § 97-31(12).
4. As a result of the contraction of the compensable occupational diseases of bilateral carpal tunnel syndrome and cubital tunnel syndrome, plaintiff is entitled to permanent partial disability compensation benefits for 8 weeks at the 1998 maximum compensation rate of $532.00 per week for the 4% permanent partial disability rating to his left hand. N.C. GEN. STAT. § 97-31(12).
5. Plaintiff is entitled to have defendants pay for medical expenses incurred or to be incurred, including all evaluations, examinations and treatment by Dr. Ross, as a result of his contraction of the occupational diseases, for so long that such examinations, evaluations and treatment may reasonably be required to effect a cure, provide relief or lessen the plaintiff's disability. Plaintiff is entitled to change his treatment from Dr. Edwards to Dr. Ross, but both physicians are approved as treating physicians. N.C. GEN. STAT. § 97-25; N.C. GEN. STAT. §97-2(19).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff permanent total disability compensation at the 1999 maximum compensation rate of $560.00 per week beginning December 23, 1999 and continuing for his lifetime. Compensation due which has accrued shall be paid to the plaintiff in a lump sum, subject to the attorney's fees approved below.
2. Defendants shall pay to plaintiff his permanent partial disability benefits for 4 weeks at the 1998 maximum compensation rate of $532.00 per week for the 2% permanent partial disability rating assigned to his right hand. Compensation due which has accrued shall be paid to plaintiff in a lump sum, subject to the attorney's fees approved below.
3. Defendants shall pay to plaintiff his permanent partial disability benefits for 8 weeks at the 1998 maximum compensation rate of $532.00 per week for the 4% permanent partial disability rating assigned to his left hand. Compensation due which has accrued shall be paid to plaintiff in a lump sum, subject to the attorney's fees approved below.
4. Defendants shall pay for all of plaintiff's medical expenses incurred or to be incurred, including all evaluations, examinations and treatment by Dr. Ross, for so long that such examinations, evaluations and treatment may reasonably be required to effect a cure, provide relief and will tend to lessen the period of plaintiff's disability. Dr. Ross is approved as a treating physician.
5. The adjustment in plaintiff's compensation rate to $560.00 per week is effective December 23, 1999. Defendants shall forward directly to plaintiff in one lump sum, subject to the attorney's fee approved below, all back due amounts owing, if any.
6. A reasonable attorney's fee of 25% of the compensation benefits due plaintiff under Paragraphs 1, 2, 3 and 5 of this Award is approved for plaintiff's counsel. Defendants shall forward directly to plaintiff's counsel twenty-five percent of the accrued amount and back due amount owing to plaintiff. Thereafter, every fourth compensation check shall be deducted from the sum due plaintiff and paid directly to plaintiff's counsel.
7. Defendants shall pay the costs, including expert witness fees, to the extent they have not already been paid, of $325.00 to Dr. Edwards, $245.00 to Dr. Ross, $120.00 to Mr. Carpenter and $120.00 to Ms. Henry.
This the _____ day of April 2002.
 S/_____________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_____________________________ BUCK LATTIMORE CHAIRMAN
S/_____________________________ CHRISTOPHER SCOTT COMMISSIONER